UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALEXSIS MARIE KENT FIERRO,

     Plaintiff,

v.                                        Case No.:  3:23-cv-875-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Alexsis Marie Kent Fierro seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on November 8, 2021, alleging disability beginning on October 1, 2016.[1] (Tr. 17, 82). The application was denied initially and on reconsideration. (Tr. 82, 83). Plaintiff requested a hearing, and on November 28, 2022, a hearing was held before Administrative Law Ken Terry ("ALJ"). (Tr. 38-73). On February 16, 2023, the ALJ entered a decision finding Plaintiff not under a disability from October 1, 2016, through the date of the decision. (Tr. 17-32).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on June 6, 2023. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on July 27, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 13).

## D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2023. (Tr. 16). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2016, the alleged onset date. (Tr. 19). At step two,

---

[1] On November 28, 2022, Plaintiff's attorney wrote a letter to the ALJ advising him that Plaintiff wished to amend the onset date of disability to February 4, 2019. (Tr. 207). At the hearing, counsel confirmed that Plaintiff wanted to amend the onset date to the date of an evaluation by Stacey L. Salant, Ph.D. conducted on February 4, 2019. (Tr. 41-42, 1025-32). The ALJ made of note of the amended onset date, but used the original date of October 1, 2016 in the decision. (Tr. 17, 32 43). As a result, the Court will do the same.

the ALJ found that Plaintiff had the following severe impairments: "depression, generalized anxiety disorder with panic, and posttraumatic stress disorder (PTSD)." (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Mentally, the claimant cannot perform complex tasks, but can perform simple, routine tasks with concentration on those tasks for two-hour periods with normal breaks and lunch. She can occasionally interact with the public and supervisors but has no limitations working with coworkers. She must avoid frequent changes in the work setting.

(Tr. 22).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as a ceremonial guard and transportation specialist. (Tr. 30). At step five, the ALJ found that considering Plaintiff's age (28 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 30-31). Specifically, the vocational expert testified that

a person with Plaintiff's limitations – which included being capable of performing unskilled work at all exertional levels – could perform such occupations as:

(1)   Hospital cleaner, DOT 323.687-010[2]

(2)   Kitchen helper, DOT 318.687-010

(3)   Packer, DOT 920.685-078

(Tr. 31). The ALJ concluded that Plaintiff had not been under a disability from October 1, 2016, through the date of the decision. (Tr. 32).

## II.   Analysis

On appeal, Plaintiff raises two issues:

(1)   Whether the ALJ failed to address the effect of Plaintiff's fluctuating mental functioning on her ability to perform sustained full-time employment; and, whether the ALJ failed to explain his reasons for discounting Plaintiff's testimony and statements of the severity of her symptoms; and

(2)   Whether the ALJ's rejection of Dr. Knox's and Dr. Salant's examining opinions complied with applicable regulations and case law governing the evaluation of medical source statements.

(Doc. 15, p. 1).

## A.   Fluctuating Mental Functioning

Plaintiff argues that the ALJ erred in failing to address Plaintiff's fluctuations in mental functioning and the effect this has on her ability to maintain employment on a sustained basis. (Doc. 15, p 12). In support, Plaintiff contends that the records

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

repeatedly refer to Plaintiff's mental functioning fluctuations, such as periods when she is unable to leave the house for days at time versus days when she is able to perform at least some daily activities. (Doc. 15, p. 12). Plaintiff claims that the ALJ focused on her good days and failed to explain why he rejected evidence that her functioning significantly declined on her bad days. (Doc. 15, p. 12).

The Commissioner argues that the ALJ properly found the medical evidence did not support Plaintiff's subjective allegations of disabling mental impairments. (Doc. 17, p. 5). The Commissioner then summarizes the generally normal mental health treatment notes in the record, pointing out the ALJ did the same. (Doc. 17, p. 5-7). Finally, the Commissioner cites Plaintiff's activities of daily living noted by the ALJ that conflict with Plaintiff's allegations, such as being the primary caregiver for her children, and on good days cleaning, doing the laundry, and cooking. (Doc. 17, p. 7).

In the Reply, Plaintiff argues that the Commissioner cites treatment records showing improvement or generally normal moods, but neither the ALJ nor the Commissioner address Plaintiff's fluctuations in mental functioning and the effect it has on her ability to maintain employment on a sustained basis. (Doc. 18, p. 1). As a result, neither addressed how Plaintiff could maintain employment with significantly reduced functioning on her bad days. (Doc. 18, p. 2). These arguments have merit.

By way of a brief background, Plaintiff served in the Navy from May 2008 through May 2012, and then worked for the Navy in a civilian capacity. (Tr. 1028). In the Navy, she was assigned to Ceremonial Command at Arlington, participating in up to 5 funerals a day and participating in the 21-gun salute in her capacity as a ceremonial guard. (Tr. 23, 993-94). After an honorable discharge, she was diagnosed with PTSD from witnessing the funerals. (Tr. 23).

Plaintiff received 100% service-connected disability benefits from the Department of Veterans Affairs, based at least in part on a February 4, 2019 Initial Post Traumatic Stress Disorder (PTSD) – DMS V, Disability Benefits Questionnaire and a February 4, 2019 Medical Opinion, Disability Benefits Questionnaire, completed by Stacy L. Salant, Ph.D. (Tr. 213, 1025-37). Dr. Salant determined that Plaintiff had a diagnosis of PTSD that conforms to the DSM-5 criteria. (Tr. 1025). She also determined that Plaintiff's stressors included the smelling of a decomposed body and hearing a bereaved widow banging on a coffin and screaming for her dead husband. (Tr. 1035). Dr. Salant found these stressors caused Plaintiff to suffer from "re-experiencing, ha[ve] hyperarousal, and avoidant symptoms as are consistent with a diagnosis of PTSD." (Tr. 1035).

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In

determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). At step four, the task of determining a claimant's RFC and ability to work rests with the administrative law judge and not with a doctor. *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016); *see also Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014), *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007).

In the decision, the ALJ summarized the relevant evidence, including Plaintiff's subjective complaints, including normal and abnormal mental examinations. (Tr; 24-30). As to subjective complaints, Plaintiff stated she was unable to continue working due to PTSD, severe anxiety, irritability, and panic attacks. (Tr. 23). The ALJ acknowledged that the frequency and severity of Plaintiff's panic attacks wax and wane depending on what triggers her. (Tr. 23). The ALJ further reported that Plaintiff's triggers include being around a group of people, not feeling safe, talking about death, driving past cemeteries, and thinking about death. (Tr. 23). Lastly, the ALJ noted that Plaintiff said she could not forget the dead military members and their families. (Tr. 25).

As to the mental examinations, the ALJ summarized Plaintiff's treatment at the U.S. Department of Veterans Affairs ("VA"). (Tr. 24-30). He noted that in March 2020, Plaintiff reported depression, anxiety, and irritability or anger. (Tr. 24). She also reported that she quit her job as a civilian with the Navy due to panic attacks that would happen suddenly and cause her to have meltdowns. (Tr. 24). The ALJ noted that Plaintiff could have 2 to 3 panic attacks per month or go a couple of months with none. (Tr. 24). Plaintiff also reported symptoms of PTSD, such as nightmares, intrusive thoughts, hypervigilance, hyper-startle, detachment with others, and feelings of guilt with past traumatic events. (Tr. 24). She also suffered from obsessive compulsive disorder, and washed her hands frequently to the point of chapping. (Tr. 24). The ALJ noted that at a May 2020 appointment, Plaintiff reported a full-blown panic attack two weeks prior, elevated anxiety and depression, and irritability. (Tr. 25). In June 2020, Plaintiff complained of depression, anxiety, and good and bad days. (Tr. 25). These reports continued in the same general manner from September 2020 through January 2022, with multiple changes to her medications in an attempt to alleviate her symptoms, with some reports indicating medications were helpful and others showing they were not. (Tr. 25-27). In July 2022, Plaintiff reported she had a nervous breakdown and had stopped taking her medications. (Tr. 27). In August 2022, Plaintiff reported triggering easily – which

caused nightmares and flashbacks – her panic attacks worsened in frequency, and she had decreased concentration. (Tr. 27).

The ALJ discounted Plaintiff's allegations of severe PTSD, anxiety, and panic attacks for these three reasons. (Tr. 28). First, the ALJ found Plaintiff's course of treatment "diminishes her complaints of significant limitations." (Tr. 28). The ALJ explained that Plaintiff received conservative treatment comprised of: participating in therapy; being prescribed medications for her mental health symptoms; and office notes documenting a good response to treatment. (Tr. 28). She never sought emergent treatment for stabilization nor did she require psychiatric hospitalization for crisis intervention. (Tr. 28). The ALJ also noted that Plaintiff's use of medications "does not suggest the presence of impairments that are more limiting than found in this decision." (Tr. 28). While the ALJ acknowledged Plaintiff's medication regimen was modified throughout the relevant period to optimize symptom control, he determined that "over the course of treatment, no substantial changes were made to the treatment regimen, suggesting that the treating providers felt symptom management and control were adequate." (Tr. 28). The ALJ also noted Plaintiff's improvement when she took her medications. (Tr. 28).

Second, the ALJ acknowledged Plaintiff complained of PTSD and associated anxiety, but then stated Plaintiff "was not involved in combat but was with an honor guard and did funerals for the fallen soldiers and veterans who passed." (Tr. 29). The

ALJ repeated that Plaintiff had not required psychiatric hospitalization and had good response to medications. (Tr. 29).

Third, the ALJ recounted that several of Plaintiff's activities of daily living are inconsistent with her reports of disabling mental impairments and are not as limited as expected given the complaints of disabling symptoms and limitations. (Tr. 29). The ALJ referred to Plaintiff living independently, adequately attending to her personal care, parenting two minor children, performing routine household chores, preparing meals, helping her children with their homework, driving, shopping, and managing personal finances. (Tr. 29).

Even though the ALJ considered the relevant evidence, including Plaintiff's normal and abnormal mental exams and subjective complaints, he failed to account for the severe unpredictable fluctuations of Plaintiff's mental functioning, especially as it relates to her PTSD. While on good days, Plaintiff is able to take care of her children and her house, but on bad days when her symptoms unpredictably worsen due to unforeseen triggers, she has her husband, a friend, or her mother help her. (Tr. 23, 53-54, 61).

The Eleventh Circuit found that many mental disorders have fluctuations, meaning that an individual will have "good days or possibly good months" as well as bad. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021). Thus, the ALJ's finding of normal mental-status exams or improvement with

medication may not be sufficient. Further, even though some mental-status examinations are better than others, "[i]t is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with" medical provider's opinions. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1263 (11th Cir. 2019). Especially for PTSD, an ALJ must consider the episodic and unpredictable nature of the impairment. *See Tumlin v. Comm'r of Soc. Sec.*, No. 2:19-cv-457-JLB-NPM, 2021 WL 1214880, at *13 (M.D. Fla. Mar. 31, 2021) ("The Eleventh Circuit has cautioned that 'an ALJ's reliance solely on face-to-face observations made in highly structured and supportive environments may not constitute substantial evidence when episodic conditions like PTSD are involved.' (*Ross v. Commissioner*, 794 F. App'x 858, 864 (11th Cir. 2019))").

Further, feeding, clothing, purchasing basic necessities, and taking care of children are not inconsistent with a person who has a severe mental impairment. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1108 (11th Cir. 2021) ("[I]t goes almost without saying that many people living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities."). Further, being capable of doing these activities on your own schedule without stress or pressure does not translate to functioning on a daily basis in a work environment. *See id.* Thus, functioning on a daily basis does not address the

unpredictable fluctuations caused by Plaintiff's PTSD and other mental conditions that could prevent her from maintaining fulltime employment.

From the decision, it is unclear whether the ALJ considered Plaintiff's fluctuating mental conditions when assessing her ability to maintain fulltime employment. As a result, substantial evidence does not support the ALJ's decision.

### B.   Remaining Issue

Plaintiff also challenges whether the ALJ properly rejected the opinions of Dr. Knox and Dr. Salant. Rather than deciding this issue, because this action is remanded on other grounds that may affect the remaining issue, on remand, the Commissioner is directed to reconsider this issue as well.

### III.   Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the fluctuating nature of Plaintiff's mental functioning and its effect on Plaintiff's ability to maintain fulltime employment, and to reconsider the opinions of Dr. Knox and Dr. Salant. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 12, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties